IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOSHUA WARD**                                                                                    **PLAINTIFF**

V.                              No. 4:22-CV-00076-KGB-ERE

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security**                                              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Objections should be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt the Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.   BACKGROUND

Mr. Joshua Ward filed an application for social security benefits due to shoulders pain, neck pain, bulging discs, numbness in his right arm, right knee pain, chronic headaches, and depression. *Tr. 255*.

Mr. Ward's claim was denied initially and upon reconsideration. At Mr. Ward's request, an Administrative Law Judge ("ALJ") held a telephonic hearing on

October 6, 2020 where Mr. Ward appeared with his lawyer, and the ALJ heard testimony from Mr. Ward and a vocational expert ("VE"). *Tr. 74-99*. The ALJ issued a decision on December 2, 2020, finding that Mr. Ward was not disabled. *Tr. 7-25*. The Appeals Council denied Mr. Ward's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

Mr. Ward, who was forty-three years old at the time of the hearing, made it to the twelfth grade in school, and has past relevant work experience as a poultry hanger, poultry farmer, farm livestock laborer, skidder operator, log loader, and logger. *Tr. 78, 94*.

## II. THE ALJ's DECISION[1]

The ALJ found that Mr. Ward had not engaged in substantial gainful activity since March 1, 2017, the alleged onset date. *Tr. 13*. He concluded that Mr. Ward had the following severe impairments: degenerative disc disease; carpal tunnel syndrome; and disorder of the muscle – ligament and fascia. *Id.* However, the ALJ concluded that Mr. Ward did not have an impairment or combination of impairments

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g); 20 C.F.R. §§ 416.920(a)-(g).

that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 14-15*.

According to the ALJ, Mr. Ward had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) occasional climbing, balancing, crawling, kneeling, stooping, and crouching; (2) frequent fingering and handling; and (3) occasional overhead, bilateral reaching. *Tr. 15*.

In response to hypothetical questions incorporating the above limitations, the VE testified that potential jobs were available in the national economy that Mr. Ward could perform, including shipping weigher, cotton classer aide, and lobby attendant. *Tr. 20, 95*. Accordingly, the ALJ determined that Mr. Ward was not disabled.

### III.  DISCUSSION

#### A.  Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that

supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

  **B.** **Mr. Ward's Arguments for Reversal**

  Mr. Ward contends that the Commissioner's decision is not supported by substantial evidence. He argues that the ALJ erred by: (1) failing to develop the record fully and fairly; (2) finding that his mental impairments were non-severe; (3) failing to properly assess his credibility; and (4) determining an RFC exceeding his physical ability. *Doc. 11 at 2*. After careful review of the record and the parties' briefs, the Court recommends affirming the Commissioner's decision as set out below.

    **1.** **Developing the Record**

  Mr. Ward argues that the ALJ failed to develop the record in two significant ways. First, he contends that the ALJ erred by relying on a mental source consultative examination ("MSCE") from a prior application for benefits. The exam was conducted on November 9, 2017, and Mr. Ward argues that the evaluation is "stale," because it was three years old by the time the ALJ issued the opinion denying benefits. *Doc. 11 at 7*. Second, he complains that the ALJ erred by failing to order

4

an orthopedic consultative exam, an NCV/EMG, or "critical medical reports," as he requested. *Id.* at 8.

"While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). Mr. Ward "has the burden to offer the evidence necessary to make a valid decision about [his] claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). He "bears a heavy burden in showing the record has been inadequately developed. He must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The ALJ was not required to order an updated MSCE. Mr. Ward alleged a disability onset date of March 1, 2017, and the consultative exam was conducted months later, well within the relevant time period. Additionally, the MSCE was not the only evidence the ALJ relied on to support his findings on Mr. Ward's mental impairments. The ALJ noted that "at the state agency level, Drs. Kristin Jarrard and Alan Kauffman placed the claimant at light work with occasional overhead reaching

and no severe mental impairments," a finding affirmed by two other doctors on reconsideration. *Tr. 18.* In fact, the ALJ included additional limitations in the RFC to those recommended. As the ALJ noted, there was "no opinion from the claimant's own medical providers that he is more limited than as provided in the above residual functional capacity assessment." *Tr. 19.*

The ALJ noted that Mr. Ward's "level of functioning was largely intact, his treatment history was limited and he showed little to no symptomatic complaints regarding his condition with good functioning noted in the record." *Tr. 14.* The state agency level examiners reached the same conclusion. *Tr. 106-107, 120-121.* Dr. Steve Shry performed a consultative exam and found that Mr. Ward was "capable of comprehending and/or carrying out simple tasks" and did not "demonstrate significant impairment in his ability to perform most work like tasks" but could be "mildly impaired" with regard to complex tasks and tasks involving math. *Tr. 378.* The ALJ noted that the medical evidence revealed that Mr. Ward was "able to communicate in an intelligible, effective and socially adequate manner, able to sustain concentration to completion and tolerate frustration with persistence to completion." *Tr. 17.*

There was no need for the ALJ to order additional physical testing. Both the medical records and activities of daily living support the RFC. Mr. Ward told a consultative examiner that he could manage his hygiene needs unaided, shop, mow

the lawn, wash dishes, and drive without restrictions. *Tr. 378.* He also takes daily walks for exercise. *Tr. 613.* The ALJ noted that, regarding carpal tunnel syndrome, there was no evidence that Mr. Ward pursued treatment for this particular condition. *Tr. 18.* He recognized Mr. Ward's cervical degenerative symptoms and cervical and bilateral shoulder surgeries, but noted that the treating doctors noted that Mr. Ward "healed well from surgery and regained functioning." *Id.* Furthermore, "MRI imaging showed no residual stenosis or cord signal with only moderate narrowing at C5-7. Cranial nerves were intact; he had good sensation, reflexes, tone, gait and coordination throughout." *Id.*

Substantial evidence supports the ALJ's decision as to Mr. Ward's mental and physical impairments and the ALJ was not required to develop the record further.

### 2. Step Two

Mr. Ward challenges the ALJ's Step Two findings in several respects. He faults the ALJ for relying on the allegedly outdated MSCE to find that his mental impairments were non-severe, and he argues that the ALJ's psychiatric review technique ("PRT") evaluation contradicts the MSCE findings in his favor. He argues that proper consideration of his diagnoses, GAF score, and IQ test results compel a finding that his mental impairments were severe.

Mr. Ward argues that "it is frankly impossible for a valid diagnosis of specific Learning Disorder to not meet the threshold severity standard in that domain." *Doc.*

7

*11 at 12*. To the contrary, the Social Security regulations provide that "[w]e will not consider your impairment to be [disabling] solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing for that impairment." 20 C.F.R. § 416.925(d). In fact, "the dispositive question [is] whether [Mr. Ward's] functioning in various areas is markedly impaired, not what one doctor or another labels his disorder." *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 731 (8th Cir. 2003). As discussed above, the ALJ considered the relevant medical and other evidence regarding Mr. Ward's mental functioning. He found that although Mr. Ward had medically determinable impairments of borderline intellectual functioning and learning disorder, these impairments did not cause more than a minimal limitation in his ability to perform basic mental work activities. Mr. Ward has not pointed the Court to any authority that would mandate finding his mental impairments severe based solely on one GAF score or otherwise. His arguments are essentially a request that this Court reweigh the evidence, which is not permitted. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022).

    The evidence of record supports the ALJ's findings.

3.  **The Credibility Assessment**

Mr. Ward asserts that the ALJ did not comply with the *Polaski* factors and instead based his credibility finding on that fact that Mr. Ward's "subjective complaints were not supported by his medical records." *Doc. 11 at 14*.

The Court normally should defer to an ALJ's credibility determination. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id*. When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Also relevant is the absence of objective medical evidence supporting the claimant's subjective complaints, although the ALJ cannot discount a claimant's credibility based on this consideration alone. *Id*. at 932.

Here, the ALJ considered Mr. Ward's activities of daily living, as well as the medical evidence, and weighed them against his subjective complaints. The ALJ noted that in function reports, Mr. Ward claimed that he needed help dressing, shaving, bathing, and general was quite limited in his activities. *Tr. 17, 273*. Yet,

during a diagnostic evaluation, he told the consultative examiner that he was able to manage his hygiene needs unaided, shop, mow the lawn, wash dishes, and drive without restrictions. *Tr. 378.* Again, he also takes daily walks for exercise. *Tr. 613.*

Mr. Ward argues that the ALJ "omits any real, substantial discussion of [his] pain-impaired subjective complaints." *Doc. 11 at 14.* Actually, the ALJ noted that Mr. Ward went without pain medication for months, did not ask for refills, and did not attend physical therapy. *Tr. 16.* The ALJ noted that Mr. Ward "was advised to seek physical therapy on multiple occasions but [there was] no evidence of compliance even after his insurance resumed." *Tr. 18*. See *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). The ALJ properly noted that Mr. Ward cited "lack of resources as the reason he [was] not currently seeking treatment, [but] there [was] no indication that the claimant has availed himself of and exhausted all possible resources available. This suggests that the claimant's impairments and the resulting limitations are not as debilitating as alleged." *Tr. 18.* Finally, an ALJ need not explicitly discuss each of the *Polaski* factors in the written decision as long as it is clear that they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

Based on the evidence as a whole, the ALJ's findings were supported by the record and there is no reason to depart from the deference normally given to the ALJ's credibility determination.

4. **RFC**

Mr. Ward contends that the ALJ erred in his RFC finding, because he "relied on a functional assessment completed by a non-treating medical consultant . . . ." *Doc. 11 at 18*. He argues that "[a] determination of a claimant's residual functional capacity must be based on medical evidence from a treating or examining physician." *Id. at 20*. Mr. Ward's argument is meritless.

Mr. Ward bears the burden of proving his RFC, which represents the most he can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id*. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

A September 2018 exam revealed "a normal and supple neck with good range of motion, normal strength and reflexes"; "no evidence of cranial nerve or sensory deficit; [and] he had normal muscle tone, gait, and coordination." *Tr. 17*. As

11

mentioned above, the ALJ noted that Mr. Ward went without pain medication for months, did not ask for refills, and did not attend physical therapy. *Tr. 16*. Additionally, he pointed out that Mr. Ward's "pain appears to be well controlled with prescription medications." *Tr. 18*. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

Mr. Ward argues that the ALJ inexplicably found that both his right and left upper extremities were subject to limitations, when only the right upper extremity was at issue. *Doc. 11 at 18-19*. This argument ignores the fact that Mr. Ward testified that he had surgeries performed on both shoulders and numbness in both hands. *Tr. 87, 89*. The ALJ noted a "surgically repaired a torn left rotator cuff and . . . left side carpal tunnel syndrome . . . ." *Tr. 15*. Furthermore, Mr. Ward's claim is confusing, considering that the additional limitations would be to his benefit.

The RFC finding reflected those limitations which the ALJ found to be credible, and it is supported by the medical evidence as a whole.

## IV. CONCLUSION

The ALJ applied proper legal standards in evaluating Mr. Ward's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated this 25th day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE